615 S.E.2d 231 (2005)
273 Ga. App. 424
In the Interest of J.H. et al., children.
No. A05A0404.
Court of Appeals of Georgia.
May 24, 2005.
*232 Brunt & Hood, Jason P. Hood, Cartersville, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Barry S. Haney, Neel & Smith, Cartersville, for appellee.
RUFFIN, Chief Judge.
The father of J.H. and C.H. appeals the termination of his parental rights to the children. At the time of the hearing, the father was incarcerated and thus not present. In his sole enumeration of error, he contends the juvenile court violated due process by refusing to continue the termination hearing until he could be present. For the following reasons, we affirm.
On appeal from a termination of parental rights, we defer to the juvenile court's factfinding and do not weigh the evidence or determine the credibility of witnesses.[1] The evidence presented at the termination hearing shows that the Bartow County Department of Family and Children Services ("DFCS") took J.H. and C.H. into protective custody on January 16, 2003. J.H. was nearly four years old, and C.H. was seventeen months old. Both parents had been arrested for violating the Georgia Controlled Substances Act, and drug residue, drug paraphernalia, and chemicals and tools used to manufacture methamphetamine were found in the family's home. The mother alleged family violence by the father, and neither parent was employed.
On February 28, 2003, the juvenile court held a deprivation hearing, at which the children's mother testified about mental and physical abuse she received from the father. A law enforcement officer testified that on February 19, 2003, he investigated a claim by the children's mother that the father had kidnapped her, beaten her, and forced her to drive to Alabama. After the father was arrested for kidnapping, he admitted to the officer that he and his wife were drug addicts, that on the trip they had used methamphetamine, and that he had hit her.
The juvenile court found the children deprived and awarded temporary custody to DFCS, with the goal of reuniting the children with their parents. The father's reunification plan required him to become drug and alcohol free; to resolve his criminal charges and commit no additional crimes; to complete a psychological evaluation, parenting course, and anger management course; to maintain employment and an appropriate residence; to regularly visit the children; and to cooperate with the Department and the court. The father failed to comply with any of the requirements of the case plan for reunification, visiting his children only twice in a year and a half and paying no child support.
Indeed, for all but four and a half months of the time the children were in DFCS's custody, the father was incarcerated. Although he initially received nine months' probation for the incident with the mother in February 2003, and was prohibited from contact with her, he was rearrested on September 4, 2003 for unauthorized contact with the mother, and his bond was revoked. On February 4, 2004, the father entered a negotiated guilty plea to attempting to manufacture methamphetamine, possession of methamphetamine, and possession of marijuana (stemming from his arrest in January 2003) and was sentenced to ten years incarceration, to serve three.
While incarcerated, the father wrote two letters. In the first, dated March 31, 2004, sent to the clerk's office, he said that he did not want to come to a panel review hearing, because "I'm going to prison, and this trip would only be a waste of time and money." The court received the second letter on May 18, 2004, wherein the father stated, "I've got a drug problem, and I've made some very bad choices in the past, but I'm not a bad person, and I do love [J.H.] and [C.H.] ... I don't want to lose my rights to my children, so please give me one more chance."
On May 19, 2004, the Department filed a petition to terminate both parents' rights. The father was personally served with the petition at the Cherokee County Jail on May 21, 2004. The deputy who served the father *233 gave him contact information for his attorney, and "told him what the date [was] that the hearing would be, and if he got moved, he needed to contact his attorney and this Court because we would not know where he was going." The clerk's office also sent the father a letter advising him of his attorney's contact information and suggesting that he contact his attorney if he had any questions.
On June 14, 2004, the Cherokee County Jail told the clerk's office that the father was still there. The juvenile court then sent an order to the Cherokee County Jail to have the father transported to the termination hearing, set for July 21, 2004. The father was moved to another facility on June 29, 2004. Neither he nor the Cherokee County Jail notified the juvenile court of his transfer, nor did the father contact his attorney.
At the termination hearing on July 21, 2004, the mother consented to termination of her parental rights. The father did not attend the termination hearing. However, his attorney was present and requested that the hearing be continued until the father could attend. The court denied the motion for a continuance and terminated the father's parental rights.
The father appeals, arguing that the juvenile court's refusal to continue the termination hearing until he could attend violated his Fourteenth Amendment right to due process. "Due process requires that, prior to the termination of his parental rights, [the father] receive notice and an opportunity to be heard."[2] The father concedes that he was properly notified of the hearing; however, he asserts that he was not provided with an opportunity to be heard because the state made no effort to provide for his appearance. We disagree.
Georgia courts have held consistently that an incarcerated parent, if represented by counsel, has no constitutional entitlement to appear personally at a hearing terminating parental rights.[3] And here, the father's "criminal activity and subsequent incarceration prevented him from availing himself of the opportunity to appear in person."[4] His attorney was present and was able to cross-examine witnesses and to present argument to the judge. The juvenile court considered two letters written by the father. Notwithstanding the father's absence, his interests were represented at the hearing. Furthermore, the father did not contact the juvenile court or his attorney after being moved to another facility, despite being instructed to do so if he were moved and having three weeks to do so.[5] Under these circumstances, the trial court did not abuse its discretion in refusing to continue the hearing.[6]
Moreover, the father cannot show any harm resulting from his absence, as he has not specified what testimony or evidence he would have provided that would have changed the outcome of the hearing.[7] "[W]ithout harm, [an] alleged error presents no basis for reversal."[8]
Judgment affirmed.
JOHNSON, P.J., and BARNES, J., concur.
NOTES
[1] See In the Interest of K.S.W., 233 Ga.App. 144, 147(1), 503 S.E.2d 376 (1998).
[2] McKinney v. Jennings, 251 Ga.App. 18, 19, 553 S.E.2d 344 (2001).
[3] See id.; In the Interest of T.N.T., 258 Ga.App. 396, 399, 574 S.E.2d 444 (2002); In the Interest of C.T., 247 Ga.App. 522, 525(2), 544 S.E.2d 203 (2001).
[4] In the Interest of B.L.H., 259 Ga.App. 482, 486(2), 578 S.E.2d 143 (2003).
[5] See In the Interest of M.G.F., 222 Ga.App. 816, 818, 476 S.E.2d 100 (1996) (party seeking continuance must meet evidentiary burden of showing due diligence).
[6] See id. at 817-818, 476 S.E.2d 100.
[7] See In the Interest of R.J.P., 222 Ga.App. 771, 773(3), 476 S.E.2d 268 (1996); T.N.T., supra; B.L.H., supra.
[8] In the Interest of B.B., 267 Ga.App. 360, 362(2), 599 S.E.2d 304 (2004).