S07A1292. HOWELL v. STATE OF GEORGIA.
(656 SE2d 511)

BENHAM, Justice.
This appeal is from an order of forfeiture regarding real property titled in the name of appellant Lindie Howell. The property was

Howell's childhood home and was conveyed to her in 2006 by a gift deed from her father, James Marshall Pounds, who continued to reside on the property following the conveyance. After law enforcement officers saw marijuana growing on the property, Pounds was arrested and 86 marijuana plants found growing along a fence and in a pump-house were seized. In rem forfeiture proceedings pursuant to OCGA § 16-13-49 were initiated, naming Pounds and Howell as purported owners. In the order forfeiting the property over Howell's objection, the trial court found as fact that Pounds had been arrested for growing marijuana on the same property in 1996 and for possessing marijuana and cocaine on that property in 2003, at which time materials for growing marijuana were found; that Howell knew of the drug convictions before the property was transferred to her in 2006; that she made no inspections of the property after the transfer and took no steps to prevent Pounds from growing marijuana on the property; that Howell paid nothing for the property, which was valued at $39,000, made no improvements on the property, paid no taxes on the property, and has not lived there for at least ten years; and that Pounds transferred his interest in the property to his then-wife in 1994, receiving it back in 2000, and transferred the property to his second wife in 2002, who transferred it to her father in 2003, who transferred it back to Pounds in 2005, who transferred it to Howell in 2006, all the transfers being by gift deed.

1. Howell contends the trial court erred in rejecting her claim that forfeiture of the property constituted an excessive fine. We disagree.

In *Thorp v. State of Ga.*, 264 Ga. 712 (1) (450 SE2d 416) (1994), this Court recognized that the Excessive Fines Clause of the Eighth Amendment to the U. S. Constitution applies to in rem forfeitures and adopted a three-factor test to determine whether a forfeiture amounts to an excessive fine:

> The first factor requires a consideration of the inherent gravity of the offense compared with the harshness of the penalty. . . . The second factor . . . evaluates whether the property was close enough to the offense to render it "guilty." . . . The third part of the analysis is "whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use."

(Citations omitted.) Id. at 717 (3). The trial court in this case applied the *Thorp* factors, and found the forfeiture not to be an excessive fine, but it also noted the possibility that the *Thorp* test has been superseded by the U. S. Supreme Court's announcement in *United States v. Bajakajian*, 524 U. S. 321 (118 SC 2028, 141 LE2d 314) (1998), of

a standard to be applied in Excessive Fines Clause analyses. The standard established in *Bajakajian* is essentially the same as that used in cruel-and-unusual-punishment cases: "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Id., 524 U. S. at 334. Federal courts have developed the application of that standard more fully, and we find particularly useful the standard applied by the U. S. Court of Appeals for the Second Circuit in *von Hofe v. United States*, 492 F3d 175, 186 (2d Cir. 2007):

> We . . . frame our excessiveness inquiry in terms of the following considerations: (1) the harshness, or gross disproportionality, of the forfeiture in comparison to the gravity of the offense, giving due regard to (a) the offense committed and its relation to other criminal activity, (b) whether the claimant falls within the class of persons for whom the statute was designed, (c) the punishments available, and (d) the harm caused by the claimant's conduct; (2) the nexus between the property and the criminal offenses, including the deliberate nature of the use and the temporal and spatial extent of the use; and (3) the culpability of each claimant.

Comparing the analysis established in *Thorp* to that set out above, we note the standard established in *Thorp* is not inconsistent with that which has developed in the federal courts, but is not as complete. Accordingly, as we drew on federal cases in *Thorp* to establish the appropriate standard, we adopt the analysis in *von Hofe v. United States*, supra, and consider it to supersede the three-factor test in *Thorp*.

Although the trial court applied the *Thorp* standard as well as the standard announced in *Bajakajian*, our analysis of the proportionality of the forfeiture to the offense on which it was based is a de novo consideration (id., 524 U. S. at 336-337) to which we will apply the standard adopted above from *von Hofe*, supra. Considering the harshness, or gross disproportionality, of the forfeiture in comparison to the gravity of the offense, we note first that the cost to Howell of this forfeiture, so far as the evidence at trial shows, was the $39,000 value of the property, while the offense underlying the forfeiture here, manufacturing marijuana, is a serious crime, a felony punishable by as much as ten years' imprisonment (OCGA § 16-13-30 (j) (2)). The particular instance of Pounds's transgression is connected to other offenses in that it was the third time Pounds was arrested in a ten-year period for drug offenses on the subject property. Howell, as a person who chose to ignore criminal activity on property titled in her

name, practicing what the trial court characterized as willful blindness, falls within the class of persons for whom the forfeiture statute was designed. Although Pounds was subject to the punishment noted above for the offense of manufacturing marijuana, Howell is not subject to any punishment for permitting the property to be used criminally other than this forfeiture. The harm caused by Howell's conduct, though perhaps not as serious as the harm caused by Pounds in growing more than 80 marijuana plants, is nonetheless serious since it permitted the continuation of illegal conduct on her property. Considering that the crime occurred solely on the subject property and had as a necessary part of the crime the use of the property itself, the nexus between the crime and the property is a particularly close one. Finally, Howell's culpability for the crime itself is not direct, as is Pounds's culpability, but her willful blindness to her father's activities on the property in light of her knowledge of his past use of the property makes her culpable, if not in a criminal sense, at least in a moral sense. Considering those factors, we conclude the harshness of the forfeiture is not grossly disproportionate to the gravity of the offense on which it is based or to Howell's own culpability.

2. Contrary to Howell's contention on appeal, the evidence supported the trial court's rejection of her innocent-owner defense. OCGA § 16-13-49 (e) (1) provides as follows:

A property interest shall not be subject to forfeiture under this Code section if the owner of such interest or interest holder establishes that the owner or interest holder: . . . (D) Does not hold the property for the benefit of or as nominee for any person whose conduct gave rise to its forfeiture. . . .

The evidence of Pounds's serial conveyances of the property by way of gift deeds and of Howell's lack of control over the property supported the trial court's finding that Howell held the property for Pounds, the person whose conduct gave rise to the forfeiture. *Salem v. State of Ga.*, 232 Ga. App. 886 (1) (503 SE2d 62) (1998). Based on that finding, the trial court's rejection of the innocent-owner defense was not error.[1]

3. Howell also asserts that the statute is unconstitutional as a violation of the provision in the Fifth Amendment to the United States Constitution that private property shall not be taken for public

---

[1] Since we hold that the trial court did not err in rejecting Howell's innocent-owner defense on a non-constitutional ground, and "[a] constitutional question will not be decided unless it is essential to the resolution of the case" (*Bell v. Austin*, 278 Ga. 844 (1) (607 SE2d 569) (2005)), we will not address Howell's constitutional arguments directed to the "purchaser for value" provision of the statute.

use without just compensation. The trial court correctly rejected that assertion, relying on the following holding in *Bennis v. Michigan*, 516 U. S. 442, 452 (116 SC 994, 134 LE2d 68) (1996): "The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." Since the forfeiture here was not made under the power of eminent domain and we have upheld the trial court's ruling that the forfeiture was proper, no Takings Clause issue is presented in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 28, 2008.

*Sims, Fleming & Benson, Joseph S. Hudson*, for appellant.
*Paul Bowden, District Attorney, Richard E. Thomas, Assistant District Attorney, Gary D. Bergman*, for appellee.